Carrie M. Francis (309280)
STINSON LLP
carrie.francis@stinson.com
1850 N. Central Avenue, Suite 2100
Phoenix, Arizona 85004
Telephone:  602.279.1600
Facsimile:  602.240.6925

*Attorneys for Plaintiff Spreckels*

# THE UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Spreckels Sugar Company, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> United Food and Commercial Workers, Local 135, AFL-CIO, CLC, <br><br> Defendant. | Case No.  **'23CV0413 GPC KSC** <br><br> Date filed: <br><br> Judge: <br><br> **COMPLAINT** |

Plaintiff Spreckels Sugar Company, Inc. brings this Complaint against Defendant United Food and Commercial Workers, Local 135, AFL-CIO, CLC for initiating an unlawful strike in violation of the collective bargaining agreement effective January 1, 2022 to January 5, 2025. Spreckels seeks injunctive relief, statutory and/or actual damages, attorneys' fees and costs, an accounting, and any such other relief as the Court may deem proper.

## JURISDICTION AND VENUE

1. This is a suit for damages and injunctive relief pursuant to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). This Court has jurisdiction under Section 301 and under 28 U.S.C. § 1337.

2. Venue is proper in this Court under 29 U.S.C. § 185(a) and because the matter giving rise to this complaint affects the collective bargaining agreement negotiated and executed within this judicial district.

## PARTIES

3.  Plaintiff Spreckels Sugar Company, Inc. ("Plaintiff" or "Spreckels") is, and at all times material hereto was, a New York corporation engaged in the business of producing and supplying to consumers and customers sugar products with a principal office at 395 West Keystone Road, Brawley, CA 92227. Plaintiff has purchased more than $50,000 worth of goods and supplies directly from points located outside the State of California. Thus, Plaintiff is an "employer" as that term is defined in the Labor Management Relations Act of 1947, as amended.

4.  Defendant United Food and Commercial Workers, Local 135, AFL-CIO, CLC ("Defendant" or "Union") is, and at all materials times was, a voluntary, unincorporated association, commonly known as and doing business as a labor organization within the meaning of 29 U.S.C. § 185. At all material times, Defendant acted as a labor organization, which represented certain Spreckels employees at its Brawley factory and outside receiving station serving the Brawley factory (collectively referred to as the "Brawley factory"). Defendant is the collective bargaining representative for employees at the Brawley factory who are covered by the parties' collective bargaining agreement effective January 1, 2022 to January 5, 2025 ("CBA"). Defendant maintains an office and place of business at 2001 Camino Del Rio South, San Diego, CA 92108.

5.  Plaintiff is, and at all material times was, an employer in an industry affecting commerce as defined in 29 U.S.C. § 142(1) and (3) and 29 U.S.C. § 152(2), (6), and (7), and within the meaning of 29 U.S.C. § 185.

6.  Under Section 301(a) of the Labor Management Relations Act (29 U.S.C. § 185(a)), United States district courts have original jurisdiction of actions arising out of violations of contracts between an employer and a labor organization, regardless of citizenship and amount.

## FACTUAL BACKGROUND

7. Plaintiff and Defendant are parties to the CBA, which sets forth the terms and conditions of employment for bargaining unit employees. *See* **Exhibit A** (CBA).

8. Relevant to this action, Section 15 of the CBA addresses a pension plan (the "Pension Plan") and provides that:

> Effective December 31, 2021, the pension plan froze and will move to termination. In place of the pension plan is an enhanced 401(k) for year-round employees. See Section 16.16 for specifics

*See* **Exhibit A** at Section 15.

9. On December 27, 2022, Plaintiff provided Defendant with requested information related to the Pension Plan termination. *See* **Exhibit B** (Letter to Defendant from Plaintiff's Human Resources Director).

10. Thereafter, on February 13, 2023, Plaintiff and Defendant commenced effects bargaining over the Pension Plan termination. During the effects bargaining session, Defendant requested additional information related to the Pension Plan termination, and Plaintiff thereafter provided Defendant with such additional information that Defendant requested. Subsequently, Defendant canceled the parties' second scheduled effects bargaining meeting that was to take place of February 17, 2023, and did not request another meeting.

11. On or about March 1, 2023, Defendant took a strike vote. On or about March 2, 2023, Defendant announced a planned work stoppage to commence March 6, 2023.

12. Section 16.9 of the CBA provides that:

> During the term of this Agreement, there shall be no cessation interruption or delay of work or other action by the employees or the Union which impairs the Employer's operations or financial condition or affects the distribution of its products, including without limitation, strikes (including sympathy strikes), work stoppages, slowdowns, picketing boycotts, or corporate campaigns. During the term of this Agreement there shall be no lockout by the Employer.

*See* **Exhibit A** at Section 16.9.

13. Plaintiff, by and through its counsel, raised this provision to Defendant and

requested written assurance that Defendant would not be calling a strike because Defendant's strike would be impermissible under the binding terms of the CBA. *See* **Exhibit C** (letter from Plaintiff's counsel to Defendant's representative dated March 2, 2023).

14. That same day, Defendant's representative responded: "We are open to meeting/bargaining on Monday [March 6, 2023] and will hold off on striking." *See* **Exhibit D** (email string between Defendant's representative and Plaintiff's counsel dated March 2, 2023).

15. Plaintiff's counsel responded that as a result of a mediation occurring in a separate, unrelated matter, he would be unable to attend a bargaining session that Monday, but offered instead to meet March 10, 2023 – a mere four days later – importantly, because of the availability of a Federal Mediation and Conciliation Service mediator to facilitate the effects bargaining. *See* **Exhibit D**.

16. Defendant responded that effects bargaining must occur on March 6, 2023, and if Plaintiff did not participate at the 11:00 am session that day, Defendant would proceed with their plan to strike. *See* **Exhibit D**.

17. Immediately preceding conversations with Plaintiff's counsel, the Union posted the following message on social media:



18. On March 3, 2023 at 4:51 am, Plaintiff's counsel responded to Defendant and agreed to meet with Defendant on March 6, 2023 at 11:00 am for effects of bargaining. However, Plaintiff's counsel again provided notice to Defendant that Spreckels would continue to pursue all available remedies and take all necessary measures to protect the integrity of its operations, including proceeding with the filing of a federal court action, seeking injunctive and monetary relief, based on the unlawful strike set to begin as early as Tuesday, March 7, 2023. *See* **Exhibit E** (email from Plaintiff's counsel to Defendant's representative dated March 3, 2023 and email from Defendant in response).

19. Defendant has expressly refused to abide by the terms and conditions of the CBA between Plaintiff and itself. The CBA includes a valid no-strike clause that precludes Defendant's strike.

20. In further violation of the CBA, Defendant has failed to comply with the grievance process under the CBA, which mandates arbitration of any disputes that arise under the CBA. Instead of presenting Plaintiff with a grievance in accordance with the CBA, the Defendant submitted an unfair labor practice charge ("ULP") to the National Labor Relations Board ("NLRB") without articulating any precise actions or conduct by Plaintiff.

21. Defendant has since refused to present Plaintiff with a grievance or details of its ULP dispute as mandated under Section 11.1 of the CBA. Nevertheless, the Parties are scheduled to meet on March 6, 2023 at 11:00 am to engage in effects bargaining. Despite the fact the parties are presently engaged in effects bargaining, Defendant continues to threaten to begin an unlawful strike beginning as early as March 7, 2023. *See* **Exhibit E.**

22. Section 11 of the CBA provides an unambiguous grievance procedure. Section 11.1 states:

> All grievances, including any and all matters of controversy, dispute or disagreement of any kind or character existing between the parties and arising out of or in any way involving the interpretation or application of the terms of this Agreement must be presented to the Employer in writing, setting forth in detail the nature of the grievance,

5

and must be presented within thirty (30) calendar days of the date of the alleged grievance occurrence, except that grievances relating to discharge or disciplinary suspension of employees must be so presented within ten (10) calendar days of the date of the occurrence. Any grievance not timely filed is deemed waived by the aggrieved party and will not be considered.

*See* **Exhibit A** at Section 11.1 In addition to Section 11.1, the CBA provides three formal procedural steps for resolving grievances. *See* **Exhibit A** at Section 11.2. If the grievance is not satisfactorily adjusted, then "the grievance may be submitted to Arbitration by written notice to the Human Resources Manager." *Id.*

23. The underlying dispute regarding the Pension Plan termination is arbitrable pursuant to the CBA's unambiguous grievance procedure.

24. Plaintiff is already participating in effects bargaining with Defendant and is ready and willing to arbitrate any grievance related to the Pension Plan termination.

25. As a result of Defendant's actions, Plaintiff has been deprived of labor peace and stability attendant to its CBA. As a result, Plaintiff seeks this Court to enjoin the Defendant from its strike actions.

## CLAIM FOR INJUNCTIVE RELIEF

26. The Union's strike will result in immediate and irreparable injury to Plaintiff by loss of business, business reputation and customer goodwill due to work stoppages.

27. Continuation of the strike will seriously harm Plaintiff, and will continue to interfere with Plaintiff's business operations.

28. There is no adequate remedy under law, except to issue an injunction and force Defendant to proceed through the agreed-upon contractual provisions for the grievance process, including arbitration.

29. Unless the conduct is immediately enjoined and restrained, irreparable injury and damage will unavoidably result to Plaintiff financially and otherwise. The amount of monetary loss by Plaintiff will be difficult to fully ascertain and Plaintiff will continue to suffer as the Defendant's strike is allowed to continue as planned.

6

30. In accordance with Fed. R. Civ. P. 65, Plaintiff after hearing, is entitled to a preliminary injunction as follows, pending arbitration of the Union's grievance and issuance of the arbitrator's decision and award.

## **PRAYER FOR RELIEF**

31. An Order enjoining Defendant from continuing with its planned strike activity;

32. An Order requiring Defendant to adhere to the grievance procedure in the CBA that culminates with arbitration;

33. For such other and further relief as the Court finds just and equitable.

Dated this 6th day of March, 2023.

                                         Stinson LLP

                                         By: *Carrie M. Francis* _____
                                              Carrie M. Francis
                                              1850 N. Central Avenue
                                              Suite 2100
                                              Phoenix, Arizona 85004
                                              *Attorneys for Plaintiff Spreckels*